**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1) Duy Kinh Nguyen<br><br>Plaintiff,<br><br>v.<br><br>1) BOOM Technologies, Inc., a Delaware Corporation,<br><br>and<br><br>2) Jeff Holley Enterprises, Inc.,<br><br>and<br><br>3) Jeffrey Holley, individually<br><br>Defendants. | ) | Case No. 4:26-cv-00517-JFJ<br><br>Jury Trial Demanded |

**COMPLAINT**

Plaintiff, Duy Nguyen (‘Plaintiff”), for his Complaint against Defendants BOOM Technologies, Inc., a Delaware Corporation, Jeff Holley Enterprises, Inc., and Jeffrey Holley, individually, collectively (“Defendants”), states and alleges as follows:

**PARTIES**

1. Plaintiff is a natural person and is a resident of Broken Arrow, Oklahoma. Plaintiff has conducted business with Defendants in the State of Oklahoma.

2. Defendant BOOM Technologies, Inc., is a Delaware Corporation with its principal place of business in Bartlesville, Oklahoma.

3. Jeff Holley Enterprises, Inc., is incorporated under the laws of the State of Oklahoma, and has its principal place of business in Bartlesville, Oklahoma.

4. Jeffrey Holley, individually, is a natural person and is a resident of Bartlesville, Oklahoma.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

6. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa) because one or more causes of action in this Complaint arise under federal law.

7. Subject matter jurisdiction also exists over the related state law claims set forth herein pursuant to 28 U.S.C. § 1367.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b).

9. Defendant BOOM Technologies, Inc., is subject to personal jurisdiction in Oklahoma as its principal place of business is in Bartlesville, Oklahoma.

10. Defendant Jeff Holley Enterprises, Inc. is subject to personal jurisdiction, as it is incorporated under the laws of the State of Oklahoma and its principal place of business is Bartlesville, Oklahoma.

11. Defendant Jeffrey Holley is subject to personal jurisdiction as he is a natural person residing in Bartlesville, Oklahoma.

## BACKGROUND

12. Plaintiff incorporates herein by reference, as if fully herein, the contents of all preceding paragraphs.

13. Plaintiff and Defendants have known each other since the summer of 2023, as they have routinely played poker together at various casinos in Tulsa, OK.

14. On one of the evenings in which Plaintiff and Defendants played poker together, Jeffrey Holley, acting on behalf of Defendants, informed Plaintiff of a good opportunity to buy into and become an investor in one of his companies, BOOM Technologies.

15. Upon information and belief, Jeffrey Holley is the CEO of both BOOM Technologies, Inc., and Jeff Holley Enterprises, Inc., and retains a 100% ownership stake in both companies.

16. Plaintiff informed Jeffrey Holley, acting on behalf of Defendants, that he was not a sophisticated investor, did not know much about stocks, and for purposes of this potential private offering was an unaccredited investor.

17. Plaintiff is an unaccredited investor for the purpose of a private offering, as Plaintiff immigrated from Vietnam to the United States in 1996 at the age of 22, and later became a United States Citizen. Plaintiff did not speak English when he first arrived, and has no formal education beyond what he received in Vietnam.

18. Jeffrey Holley, acting on behalf of Defendants, told Plaintiff that "you have to trust me, I'm a good friend, and I will give you a good offer."

19. On June 14, 2024, Plaintiff was formally solicited by Defendants about Plaintiff purchasing shares of stock in BOOM Technologies.

20. BOOM Technologies is a prepaid wireless provider that sells no-contract cell phone plans, including unlimited talk/text/data and data-only options.

21. Jeffrey Holley, acting on behalf of Defendants, solicited and represented that he had "250,000 shares [of BOOM Technologies stock] open up at a valuation of $8,000.000.00."

22. Plaintiff asked Defendants the clarifying question of "[s]o the 250,000 worth of shares is valued at $8,000,000.00?"

23. Jeffrey Holley, acting on behalf of Defendants, clarified and represented and told Plaintiff that he was buying $250,000.00 worth of stock in BOOM Technologies that was valued at $8,000,000.00. Defendant further advised Plaintiff that BOOM was "bringing in" $10,000,000.00 each month and BOOM Technologies was valued at $50,000,000.00.

24. Jeffrey Holley, acting on behalf of Defendants, further clarified and explicitly described the transaction to Plaintiff by affirmatively stating "[s]o another way to look at is you are getting shares at 1/7 of the cost that they are getting them . . . it will get you over 1 million shares . . . we are looking to go public in 8 months with a open price of $5.00 plus a share." Plaintiff affirmatively and with scienter misrepresented the value of the stock Plaintiff was offered to purchase. To Plaintiff's knowledge, BOOM Technologies remains a privately held company, and Defendant took no actual affirmative steps to take the company public through an Initial Public Offering, as materially misrepresented by Jeffrey Holley, acting on behalf of Defendants.

25. Jeffrey Holley, acting on behalf of Defendants, never clarified or articulated how Plaintiff was getting shares at 1/7 of the cost other investors were getting them. Jeffrey Holley, acting on behalf of Defendants, acted with scienter in omitting this information, and further acted with scienter in manipulating the stock's price when soliciting and offering to one potential investor compared to another potential investor.

26. Further, Plaintiff was never shown any non-financial or financial information regarding BOOM Technologies as required by federal law when preparing to issue securities in a private offering to non-accredited investors.

27. Jeffrey Holley, acting on behalf of Defendants, never informed Plaintiff if this sale of securities was a private offering under Rule 504 of Regulation D of The Securities Act of 1933 (codified as 17 C.F.R. § 230.504), or if this was a private offering under Rule 506(b) of Regulation D of The Securities Act of 1933 (codified as 17 C.F.R. § 230.506(b)). [1]

28. Under Rule 504, it is customary for individuals or companies soliciting and issuing securities to investors for capital raising to provide potential non-accredited investors with a Private Placement Memorandum, to ensure that no material information is omitted, as Rule 504 offerings are subject to SEC Rule 10b-5 anti-fraud provisions.

29. The disclosure requirements of Rule 506(b) are governed by Rule 502(b) of The Securities Act of 1933 (codified as 17 C.F.R. § 230.502(b)).

30. Rule 502(b) requires individuals or companies soliciting and issuing securities to non-accredited investors for capital raising to furnish the potential non-accredited investors with non-financial information such as (1) a description of the business, (2) risk factors associated with the business and the investment, (3) how the investment proceeds will be used, and (4) the compensation of the directors and executives of the company issuing the securities.

31. Rule 502(b) requires individuals or companies soliciting and issuing securities to non-accredited investors for capital raising to furnish the potential non-accredited investors with financial information required under Part F/S of SEC Form 1-A. Such financial statement information must be prepared in accordance with Generally Accepted Accounting Principles in the United States (GAAP).

[1] This transaction could not have been a private offering under Rule 506(c) of Regulation D of the Securities Act of 1933 (codified as 17 C.F.R.§ 230.506), as Rule 506(c) offerings are permitted only for accredited investors, which Plaintiff was not.

32. Rule 502(b)(2)(v) requires the issuer of the securities "shall also make available to each purchaser at a reasonable time prior to his purchase of securities in a transaction under § 230.506(b) the opportunity to ask questions and receive answers concerning the terms and conditions of the offering and to obtain any additional information which the issuer possesses or can acquire without unreasonable effort or expense that is necessary to verify the accuracy of information furnished . . ."

33. Rule 506(b) private offerings are subject to the anti-fraud provisions of SEC Rule 10b-5.

34. Jeffrey Holley, acting on behalf of Defendants, never furnished Plaintiff with a Private Placement Memorandum, customary to Rule 504 Private Placements, and never furnished Plaintiff with required non-financial and financial information as required by Rule 502(b) for a Rule 506(b) Private Placement.

35. Jeffrey Holley, acting on behalf of Defendants, acted with scienter and omitted material financial information when Defendants intentionally failed to provide the necessary non-financial and financial information as required under Rule 504 and Rule 502(b) (governing Rule 506(b)).

36. Plaintiff, as permitted under Rule 502(b)(2)(v), asked Defendants for various non-financial and financial information regarding BOOM Technologies.

37. Specifically, Plaintiff asked Defendant what the debt ratio of the company for the previous three (3) years was.

38. Jeffrey Holley, acting on behalf of Defendants, never gave an answer to Plaintiff regarding the debt ratio of BOOM Technologies.

39. By neglecting to give an answer, Jeffrey Holley, acting on behalf of Defendants, acted with scienter and omitted material information regarding the debt ratio of the company that Plaintiff would have relied on in making a decision to purchase stock in BOOM Technologies.

40. The material misrepresentations and omissions made by Jeffrey Holley, acting on behalf of Defendants, fraudulently induced Plaintiff into purchasing stock in BOOM Technologies, but for the material representations and omissions, Plaintiff never would have purchased the stock.

41. On June 22, 2024, Plaintiff communicated to Jeffrey Holley, acting on behalf of Defendants, that he wanted to purchase stock in BOOM Technologies after reviewing and relying on the affirmative misrepresentations that Jeffrey Holley, acting on behalf of Defendants, communicated to him on June 14, 2024. Plaintiff further relied upon the omissions that Jeffrey Holley, acting on behalf of Defendants, made when Defendants acted with scienter by failing to disclose and intentionally omitting the necessary non-financial and financial information required under Rule 504 and Rule 502(b) (governing Rule 506(b)). But for these material misrepresentations and omissions, Plaintiff never would have purchased the stock.

42. Jeffrey Holley, acting on behalf of Defendants, asked Plaintiff "what dollar amount" he was thinking about purchasing. Plaintiff informed Defendant that he wanted to purchase $250,000.00 worth of stock.

43. Further, Plaintiff asked Defendant about the valuation of the stock. Specifically, Plaintiff stated, "[y]ou are telling me the shares are evaluated at $0.12 a share . . . is that the bottom price we can buy in for?"

44. Jeffrey Holley, acting on behalf of Defendants, responded to Plaintiff by representing that "[t]hat's more than the current valuation of $50,000,000.00 plus . . . that comes

from pieces of the valuation that I gave you of the platform at $9,000,000.00 and the customer count . . . we have over 100k customers."

45. Jeffrey Holley, acting on behalf of Defendants, acted affirmatively, recklessly, and with scienter when he failed to accurately address the question Plaintiff asked, but rather continued to make affirmative misrepresentations and omissions about material information regarding the stock's price. But for Defendants' affirmative material misrepresentations, omissions, and manipulations regarding the stock price, Plaintiff never would have purchased the stock.

46. Plaintiff agreed to purchase the shares in BOOM Technology, relying on the affirmative material misrepresentations and omissions given to him by Jeffrey Holley, acting on behalf of Defendants.

47. Jeffrey Holley, acting on behalf of Defendants, sent Plaintiff wire transfer instructions, and the parties agreed to complete the transaction when Defendant returned from his trip to Las Vegas, NV. Jeffrey Holley, acting on behalf of Defendants, informed Plaintiff that once the money was wired, the stocks would be issued.

48. On August 24, 2024, Jeffrey Holley, acting on behalf of Defendants, texted Plaintiff and asked him what names he wanted issued on the stock. Plaintiff responded with "Duy Kinh Nguyen." Further, on August 24, 2024, Plaintiff and Defendant entered into an Agreement for the Purchase of Restricted Securities with BOOM Technologies, Inc., and Jeff Holley Enterprises, Inc., for the sale of 2,000,000 shares of common stock valued at $.125 per share ($250,000.00 total investment).

49. On August 26, 2024, Plaintiff successfully completed a wire transfer through Arvest Bank.

50. On November 7, 2024, Plaintiff was given his “proof of stock shares” from BOOM Technologies, representing that Plaintiff was the owner of 2,000,000 shares of common stock.

51. In February 2025, Plaintiff asked Jeffrey Holley, acting on behalf of Defendants, to send him the year-end report for BOOM Technologies, to see where the company was at and how it was doing. Jeffrey Holley, acting on behalf of Defendants, acted with scienter, never responded to Plaintiff’s request, and never provided the year-end report.

52. Further, in April 2025, Plaintiff asked Jeffrey Holley, acting on behalf of Defendants, about the time estimate regarding when BOOM Technologies may go public on a stock market and how much Plaintiff’s 2,000,000 shares were currently valued at.

53. Jeffrey Holley, acting on behalf of Defendants, responded on April 20, 2025, asking Plaintiff if he had time to talk on Tuesday (April 22, 2025). Plaintiff informed him that he had time to talk on April 22, 2025.

54. The April 22, 2025, call never occurred. Plaintiff contacted Defendant on April 25, 2025, and continued to inquire into Defendant’s availability to discuss the valuations of the shares and BOOM Technologies' future plans. Jeffrey Holley, acting on behalf of Defendants, responded that they would talk soon, as Defendant represented that he was working with a valuation company on BOOM Technologies' current valuation.

55. On April 30, 2025, Plaintiff contacted Defendant again about discussing BOOM Technologies. Jeffrey Holley, acting on behalf of Defendants, again gave non-committal answers and informed Plaintiff, “we can’t really do anything for 6 months anyway.”

56. Plaintiff expressed his concern to Jeffrey Holley, acting on behalf of Defendants, and expressed that he would just like a definitive answer, and expressed his frustration that Defendants continued to promise answers but would always change his narrative when asked.

Jeffrey Holley, acting on behalf of Defendants, continued to make material misrepresentations and omissions regarding the financial status and health of BOOM Technologies.

57. Jeffrey Holley, acting on behalf of Defendants, represented to Plaintiff that once they had the valuation (which could take 6 months), they would only be 3-6 months from going public. Defendant, however, materially omitted from Plaintiff other details that are required when a company goes public. For instance, Jeffrey Holley, acting on behalf of Defendants, never advised Plaintiff that if BOOM Technologies was to go public, it would require an audit of 3-5 years of financial statements to meet strict Generally Accepted Accounting Principles (GAAP) as required by publicly traded companies (Plaintiff asked for the 2024 financials but never received them, *see* ¶ 51), and a submission of an S-1 registration statement to the Securities and Exchange Commission ("SEC") for approval, all of which usually take 12-18 months to complete. Instead, Jeffrey Holley, acting on behalf of Defendants, repeatedly made affirmative misrepresentations and omissions to Plaintiff that this cumbersome and lengthy process would only take 6 months.

58. Rather, Jeffrey Holley, acting on behalf of Defendants, communicated to Plaintiff that he "wanted the [valuation] numbers and bad as anyone" but never corrected any of his material omissions.

59. In September 2025, Plaintiff again asked Defendant when BOOM Technologies may go public.

60. Jeffrey Holley, acting on behalf of Defendants, informed Plaintiff that "we are still picking an investment banker, so it will be another 6-8 months still . . . once we pick the group, the clock will start on that 6-8 months, and we will pick this coming week."

61. From September 2025-December 2025, Plaintiff heard no updates from Jeffrey Holley, acting on behalf of Defendants, regarding the IPO process. In January 2026, Plaintiff

contacted Defendant and asked him if there was a way for Plaintiff to sell half his shares (1,000,000 shares) in BOOM Technologies.

62. Jeffrey Holley, acting on behalf of Defendants, represented to Plaintiff that during this "raise" there is an option for shareholders to sell "some shares, but it will probably be 30 days."

63. In February 2026, Plaintiff contacted Jeffrey Holley, acting on behalf of Defendants, again about selling some of his shares, as Defendant never responded to Plaintiff regarding his original request from January 2026. Jeffrey Holley, acting on behalf of Defendants, responded with "[I]'m busting to make it happen" and provided no further explanation.

64. Plaintiff reached out again two (2) weeks later about selling his shares, and Jeffrey Holley, acting on behalf of Defendants, informed Plaintiff that he was working hard on it and may have a friend interested in purchasing the shares.

65. In March 2026, Plaintiff contacted Defendant again about selling his shares and asked Defendant if he could personally buy them from Plaintiff. Jeffrey Holley, acting on behalf of Defendants, responded, "I think I have the business sold and it will allow all of us to get our money back," and provided no further explanation.

66. In April 2026, Plaintiff asked Defendant how the sale of the company was going. Jeffrey Holley, acting on behalf of Defendants, represented to Plaintiff, "we have an extension in place, but maybe like 2 more weeks from tomorrow." Defendant provided no explanation of who granted this extension and why it was needed.

67. In May 2026, Plaintiff inquired again with Defendant regarding when the sale of the company may occur and when the funds may be available to buy Plaintiff's shares.

68. Jeffrey Holley, acting on behalf of Defendants, informed Plaintiff, "I need it as bad as you . . . we are close, my friend . . . maybe as early as next week." Jeffrey Holley, acting on behalf of Defendants, further informed Plaintiff that two (2) entities were bidding on BOOM Technologies. Jeffrey Holley, acting on behalf of Defendants, has made no further contact with Plaintiff regarding this matter since May 2026.

69. Plaintiff contends that Jeffrey Holley, acting on behalf of Defendants, would employ this fraudulent scheme on other investors as well. Specifically, Plaintiff alleges that Jeffrey Holley, acting on behalf of Defendants, would solicit other non-accredited investors and offer them a drastically reduced price to purchase stock in his company. Jeffrey Holley, acting on behalf of Defendants, would then consummate the sale of stock to the buyer, take the buyer's money, and keep it for his own benefit, with no intent to deploy the acquired capital in BOOM Technologies. When the non-accredited investor asked Jeffrey Holley for an update on the company or whether there was a way to get their investment back, Defendants used delay tactics, with no intention of returning the investment.

**COUNT I- VIOLATION OF § 10(b) OF THE SECURITIES AND EXCHANGE ACT OF 1934 AND REGULATION 10b-5 (17 C.F.R. § 240.10b-5)**

70. Plaintiff incorporates herein by reference, as if fully herein, the contents of all preceding paragraphs.

71. As set forth herein, Defendants directly or indirectly, knowingly or recklessly, by use of the means or instrumentality of interstate commerce, or of the mails, or of the facilities of a national security exchange in connection with the purchase or sale of securities: (a) has employed schemes, device, and artifices to defraud Plaintiff and others; (b) has made untrue statements of material fact, and has omitted and failed to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and

(c) has engaged in transactions, acts, practices and courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

**A. Purchase of Securities**

72. This Count arises from Plaintiff's purchase of 2,000,000 shares of common stock in BOOM Technologies and Jeff Holley Enterprises on or about August 24, 2024, for a total investment amount of $250,000.00.

73. The stock purchased by Plaintiff constitutes securities within the meaning of § 10(b) of the Securities Exchange Act of 1934.

74. The solicitation, purchase, and sale of the securities occurred via means of interstate commerce via communications via text message and phone call between Plaintiff and Defendants, and via bank wire transfer when Plaintiff wired money to Defendants for the purchase of stock; this was a transaction in which § 10(b) and Rule 10b-5 apply.

**B. Material Misrepresentations and Omissions**

75. In connection with Plaintiff's decision to purchase the securities, Defendants Jeffrey Holley, Jeff Holley Enterprises, and BOOM Technologies made material misrepresentations and omitted material facts concerning the purported stock price of the private securities offering, omitted required non-financial and financial disclosures, BOOM Technologies' financial condition, debt ratio for the past three (3) years, profitability, prospects of the company going public, and other material matters alleged above.

76. Specifically, on or about June 14, 2024, Jeffrey Holley, acting on behalf of Defendants, represented to Plaintiff that he had "250,000 shares [of BOOM Technologies stock] open up at a valuation of $8,000.000.00." *See* ¶ 21.

77. Jeffrey Holley, acting on behalf of Defendants, represented and told Plaintiff that he was buying $250,000.00 worth of stock in BOOM Technologies that was valued at $8,000,000.00. *See* ¶ 23.

78. Jeffrey Holley, acting on behalf of Defendants explicitly described the transaction to Plaintiff by affirmatively stating "[s]o another way to look at is you are getting shares at 1/7 of the cost that they are getting them . . . it will get you over 1 million shares . . . we are looking to go public in 8 months with a open price of $5.00 plus a share." *See* ¶ 24.

79. Jeffrey Holley, acting on behalf of Defendants, never clarified or articulated how Plaintiff was getting shares at 1/7 of the cost other investors were getting them. *See* ¶ 25.

80. Prior to purchasing the securities, Plaintiff asked Defendant Jeffrey Holley, acting on behalf of Defendants, about the valuation of the stock. Specifically, Plaintiff asked, "[y]ou are telling me the shares are evaluated at $0.12 a share . . . is that the bottom price we can buy in for?" *See* ¶ 43.

81. Jeffrey Holley, acting on behalf of Defendants, responded to Plaintiff by representing that "[t]hat's more than the current valuation of $50,000,000.00 plus . . . that comes from pieces of the valuation that I gave you of the platform at $9,000,000.00 and the customer count . . . we have over 100k customers." *See* ¶ 44.

82. These material misrepresentations were made with scienter and were materially false and misleading because Jeffrey Holley, acting on behalf of Defendants, affirmatively represented to Plaintiff that Plaintiff was purchasing BOOM Technologies securities at a substantial discount to their purported actual value, while simultaneously representing that BOOM Technologies had a current valuation of more than $50,000,000.00, that the securities being offered to Plaintiff were valued at approximately $0.12 per share, and that Defendants anticipated BOOM

Technologies would become publicly traded within approximately eight (8) months at an opening price of $5.00 or more per share. These material representations, taken together, conveyed to Plaintiff that the securities had a present and objectively supported value substantially greater than the amount Plaintiff was being asked to pay and that Plaintiff's investment presented a substantial opportunity for appreciation. Jeffrey Holley, acting on behalf of Defendants, further represented that Plaintiff was obtaining the securities at approximately one-seventh of the cost at which other investors were obtaining them, without disclosing or explaining any legitimate basis for that comparison. To the extent Defendants knew that the purported valuation, per-share value, discount, number of shares, anticipated public offering, or projected opening price were unsupported, inaccurate, materially incomplete, or otherwise not reasonably based in fact, Defendants' statements created a materially misleading impression concerning the true value, nature, and potential return of the securities.

83. In addition to the foregoing affirmative misrepresentations, Defendant Jeff Holley, acting on behalf of Defendants, failed to disclose material information that Plaintiff would have relied upon in making a decision to invest in BOOM Technologies.

84. Jeffrey Holley, acting on behalf of Defendants, never disclosed, and subsequently omitted from Plaintiff if this sale of securities was a private offering under Rule 504 of Regulation D of The Securities Act of 1933 (codified as 17 C.F.R. § 230.504), or if this was a private offering under Rule 506(b) of Regulation D of The Securities Act of 1933 (codified as 17 C.F.R. § 230.506(b)). *See* ¶ 27.

85. Jeffrey Holley, acting on behalf of Defendants, never provided Plaintiff with a Private Placement Memorandum, which is customary under Rule 504 Private Placements, which

would have contained material non-financial and financial information that Plaintiff would have relied upon in making a decision to invest in BOOM Technologies. *See* ¶ 28.

86. Jeffrey Holley, acting on behalf of Defendants, never provided Plaintiff the required non-financial and financial disclosures as outlined in Rule 502(b) (governing Rule 506(b) Private Placements). *See* ¶¶ 29-31. Plaintiff would have relied on this information in deciding whether to invest in BOOM Technologies.

87. Further, when Plaintiff asked Defendant Jeffrey Holley, acting on behalf of Defendants, as permitted by Rule 502(b)(2)(v), for the debt ratio of the company for the past three (3) years, Defendant Jeffrey Holley, acting on behalf of Defendants, never responded to this request and thereby omitted the same. *See* ¶¶ 32, 36-38. Plaintiff would have relied on this information in deciding whether to invest in BOOM Technologies.

88. The omitted information was material because a reasonable investor would have considered the information important in deciding whether to purchase securities in BOOM Technologies and in evaluating the nature, value, financial condition, and risks associated with the investment. Information concerning whether the securities were being offered pursuant to Rule 504 or Rule 506(b), the terms and nature of the offering, the financial and non-financial condition of BOOM Technologies, its liabilities and indebtedness, its financial performance, and the basis for its purported valuation would have allowed Plaintiff to independently evaluate the investment opportunity and assess whether the representations made by Jeffrey Holley concerning the value and potential appreciation of the securities were accurate and supported by the company's actual financial condition.

89. At the time the foregoing material omissions were made, Defendant Jeffrey Holley, acting on behalf of all Defendants, knew or was deliberately reckless in not knowing that the

material omissions were false or misleading because Defendant Jeffrey Holley was directly involved in soliciting Plaintiff's investment in BOOM Technologies, made affirmative representations to Plaintiff concerning the nature, value, and potential appreciation of the securities, and possessed or had access to information concerning the terms of the securities offering and the financial condition of BOOM Technologies.

90. Defendant Jeff Holley's, acting on behalf of Defendants, omissions of the material information noted above rendered his affirmative representations concerning the value, financial condition, and investment potential of BOOM Technologies materially false and misleading because Holley's representations conveyed to Plaintiff that the securities had a legitimate and objectively supported value, while Defendant Jeffrey Holley simultaneously withheld material information necessary for Plaintiff to evaluate whether those representations were accurate. Specifically, Defendant Jeffrey Holley represented to Plaintiff that BOOM Technologies had a valuation of more than $50,000,000.00, that Plaintiff was purchasing securities at a substantial discount to their purported value, and that the securities would potentially increase substantially in value following BOOM Technologies' anticipated public offering. Defendant Jeffrey Holley's failure to disclose the terms and nature of the securities offering, the non-financial and financial information concerning BOOM Technologies, the company's debt and financial condition, and the basis for its purported valuation rendered those representations materially misleading because Plaintiff was denied information necessary to independently evaluate the company's purported valuation, the actual value and risks of the securities, and the likelihood that the securities would appreciate as represented.

91. A reasonable investor would have considered the foregoing misrepresentations and omissions material to the decision whether to purchase BOOM Technologies stock because the

misrepresentations and omissions directly concerned the value of the securities, BOOM Technologies' financial condition and indebtedness, the terms of the offering, and the potential for future appreciation. This information was necessary for a reasonable investor to evaluate the risks and value of the investment and determine whether, and at what price, to purchase the securities.

92. Plaintiff relied upon the foregoing representations and omissions to his detriment in deciding to purchase the BOOM Technology stock.

93. Had Plaintiff known the true facts concerning the actual valuation of BOOM Technologies, the basis for the purported $50,000,000.00 valuation, the actual value of the securities being offered, the purported one-seventh discount represented by Jeffrey Holley, the actual number and value of shares Plaintiff was purchasing, the financial condition and indebtedness of BOOM Technologies, the company's financial performance and prospects, the terms and nature of the securities offering, the applicable exemption under Regulation D, the non-financial and financial disclosures that should have been provided in connection with the offering, and the absence of a reasonable or factually supported basis for Defendants' representations that BOOM Technologies would become publicly traded within approximately eight (8) months at an opening price of $5.00 or more per share, Plaintiff would not have purchased the BOOM Technologies securities.

**C. Falsity and Facts Demonstrating Falsity**

94. The representations described above were false and misleading when made because Defendants represented that BOOM Technologies had a valuation exceeding $50,000,000.00, that Plaintiff was purchasing its shares at a substantial discount to their actual value, and that the company was expected to go public within approximately eight (8) months at an opening price of $5.00 or more per share, while simultaneously failing to disclose material information concerning

the company's financial condition, indebtedness, valuation, and the nature and terms of the securities offering. These omissions rendered Defendants' representations concerning the value, risks, and potential return of the securities materially false and misleading.

95. Specifically, at the time Defendant Jeffrey Holley represented that BOOM Technologies had a current valuation of more than $50,000,000.00 and that Plaintiff was purchasing shares at a substantial discount to their actual value, Defendant Jeffrey Holley knew or had access to information demonstrating that the purported valuation and value of the securities were not supported by the financial condition, indebtedness, operations, or other financial information concerning BOOM Technologies that Defendants failed to disclose to Plaintiff.

96. Defendant Jeff Holley nevertheless represented to Plaintiff that Plaintiff could purchase approximately $250,000.00 worth of BOOM Technologies securities at a substantially discounted valuation and that the investment could result in a return of approximately $10,000,000.00 based upon the purported value and anticipated appreciation of the securities.

97. The information known to Defendant Jeffrey Holley was inconsistent with and rendered materially misleading the representations made to Plaintiff, and further demonstrated the materiality of the information omitted from Plaintiff.

**D. Materiality**

98. The foregoing misrepresentations and omissions concerned material facts relating to the purchase of BOOM Technologies common stock.

99. The information was material because a reasonable investor would consider the actual value, financial condition, indebtedness, and potential return of the securities important in deciding whether to invest, how much to invest, and whether the potential return justified the risks associated with the investment.

100. Had Plaintiff known the true facts concerning the actual value and financial condition of BOOM Technologies, the basis for its purported valuation, the nature and terms of the private securities offering, and the risks associated with the investment, Plaintiff would not have purchased the BOOM Technologies common stock.

**E. Scienter**

101. Defendants acted with scienter in making the foregoing material misrepresentations and omissions.

102. At the time the material misrepresentations and omissions were made, Defendant Jeffrey Holley knew that the actual value, financial condition, indebtedness, and other circumstances underlying BOOM Technologies' purported valuation were materially different from, or did not support, the representations Defendant Jeffrey Holley made to Plaintiff concerning the value and potential return of the securities.

103. Defendant Jeffrey Holley, acting on behalf of Defendants, obtained this knowledge through his role as CEO of BOOM, his access to BOOM Technologies' financial and business information, and his access to information concerning the company's valuation, capitalization, indebtedness, operations, and the terms of the securities being offered to Plaintiff.

104. Defendant Jeffrey Holley, acting on behalf of Defendants, personally made, approved, and authorized the material misrepresentations and omissions made to Plaintiff despite possessing information demonstrating that those representations were false or misleading.

105. Defendant Jeffrey Holley's, acting on behalf of Defendants, scienter is further demonstrated by his direct participation in soliciting Plaintiff's investment, his specific representations concerning BOOM Technologies' valuation and the potential return on Plaintiff's investment, his representation that Plaintiff could purchase approximately $250,000.00 in

securities and potentially realize a return of approximately $10,000,000.00, and his failure to provide information concerning BOOM Technologies' financial condition and debt ratio despite Plaintiff's specific request for such information.

106. Defendants Jeffrey Holley, BOOM Technologies, and Jeff Holley Enterprises had a direct financial interest in Plaintiff's purchase of the common stock because the proceeds from Plaintiff's investment were paid in connection with the purchase of BOOM Technologies securities, providing a direct financial benefit to BOOM Technologies and, in turn, to Jeffrey Holley as an owner and officer, with a financial interest in the company.

107. Defendants' conduct was undertaken knowingly, intentionally, and/or with deliberate or extreme recklessness with respect to the truth or falsity of the representations and omissions alleged herein.

108. The facts above give rise to a strong inference that Defendants acted with the requisite fraudulent intent and scienter.

**F. In Connection with the Purchase or Sale of Securities**

109. Defendants' misrepresentations and omissions were made in connection with Plaintiff's purchase of the 2,000,000 shares of BOOM Technology common stock.

110. The material misrepresentations and omissions were communicated to Plaintiff for the purpose of inducing Plaintiff to purchase the common stock.

111. Plaintiff's purchase of the common stock was the direct and intended consequence of Defendants' fraudulent conduct.

**G. Reliance**

112. Plaintiff relied upon Defendants' material misrepresentations and omissions in deciding to purchase the securities.

113. Specifically, Plaintiff relied upon Defendant Jeffrey Holley's, acting on behalf of Defendants, representations that BOOM Technologies had a valuation exceeding $50,000,000.00, that Plaintiff was purchasing the securities at a substantial discount to their purported value, that Plaintiff's approximately $250,000.00 investment could potentially result in a return of approximately $10,000,000.00, and that BOOM Technologies intended to go public within approximately eight (8) months at an opening price of $5.00 or more per share, as well as Defendants' omissions concerning the company's financial condition, indebtedness, valuation, and the nature and terms of the securities offering, in deciding to invest in BOOM Technologies.

114. Plaintiff would not have purchased the common stock but for Defendants' material misrepresentations and omissions.

**H. Transaction Causation**

115. Defendants' material misrepresentations, omissions, and overall fraudulent conduct were a substantial factor in causing Plaintiff to enter into the securities transaction.

116. But for Defendants' fraudulent material misrepresentations and omissions, Plaintiff would not have purchased the securities.

117. Plaintiff therefore suffered damages as a result of being fraudulently induced to enter into a transaction that Plaintiff would not otherwise have entered into.

**I. Loss Causation**

118. Plaintiff's economic losses were proximately caused by the materialization of the risks and circumstances that Defendants concealed and/or misrepresented.

119. Specifically, after Plaintiff purchased the common stock, Plaintiff routinely followed up with Defendants about the status and value of his shares and repeatedly expressed his desire to sell them. Despite Plaintiff's repeated requests, Defendants never permitted or facilitated

Plaintiff's sale of the securities. BOOM Technologies also failed to complete the anticipated public offering within the time period Defendants represented, and the securities did not increase in value as represented. As a result, Plaintiff was unable to realize the substantial return represented by Defendants and remained unable to sell his shares for the value represented to him.

120. As a result, the actual value of the securities was substantially less than the value represented to Plaintiff, or in the alternative, the securities had no value, and Defendants knew they had no value and fraudulently induced and took Plaintiff's money for their own material benefit.

121. Plaintiff thereby suffered economic losses in an amount to be established at trial.

**J. Rule 10b-5(a)-(c)**

122. Defendants' conduct violated SEC Rule 10b-5(b) by making untrue statements of material fact and/or omitting material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading.

123. Defendants also violated Rule 10b-5(a) and Rule 10b-5(c) by employing devices, schemes, and/or artifices to defraud and by engaging in acts, practices, and/or courses of business that operated as a fraud or deceit upon Plaintiff.

124. Specifically, Defendants' scheme and/or course of conduct consisted of soliciting Plaintiff and other non-accredited investors to purchase BOOM Technologies common stock by offering the securities at a purportedly substantially reduced price and representing that the securities were significantly more valuable than the purchase price. Defendants, through Jeffrey Holley, would induce investors to provide their money in exchange for the securities, while concealing material information concerning BOOM Technologies, its financial condition, indebtedness, valuation, and the purported future value of the securities. After receiving investors'

funds, Defendants would retain and/or exercise control over the funds rather than deploy the capital for the purposes represented to investors. When investors subsequently sought information about their investment, requested updates on BOOM Technologies, or sought to sell or recover their investment, Defendants used delay tactics and provided additional communications about the company's purported future prospects, without intending to give investors a meaningful opportunity to recover their investments. Defendants' conduct was part of a continuing scheme and course of business designed to induce investors to purchase BOOM Technologies securities, obtain and retain their investment funds, and prevent investors from recovering those funds, thereby operating as a fraud and deceit upon Plaintiff and other investors.

**K. Damages**

125. As a direct and proximate result of Defendants' violations of § 10(b) and Rule 10b-5, Plaintiff suffered damages.

126. Plaintiff's actual damages include the approximately $250,000.00 Plaintiff paid to purchase the BOOM Technologies common stock, less the actual value, if any, of the securities received, together with any other recoverable losses proximately caused by Defendants' conduct, in an amount to be proven at trial.

127. Plaintiff is entitled to recover all damages and other relief available under § 10(b) and Rule 10b-5, and applicable law.

128. Plaintiff prays for judgment in his favor and against all Defendants in a fair and reasonable amount to compensate him for the damages he has suffered and will suffer, as will be determined at trial, for punitive damages, for his costs and disbursements in this action, including attorneys' fees and expenses, and for such other and further relief as this Court deems just and proper.

**COUNT II- VIOLATION OF § 20(a) OF THE SECURITIES AND EXCHANGE ACT OF 1934 (15 U.S.C. § 78t)**

129. Plaintiff incorporates herein by reference, as if fully herein, the contents of all preceding paragraphs.

130. At all relevant times, Defendant Jeffrey Holley was a "controlling person" of BOOM Technologies and Jeff Holley Enterprises within the meaning of § 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).

131. At all relevant times, Defendant Jeffrey Holley, individually, exercised control over BOOM Technologies, Inc., a Delaware Corporation, and Jeff Holley Enterprises, Inc., and possessed the power to direct or cause the direction of management and policies of BOOM Technologies, Inc., a Delaware Corporation, and Jeff Holley Enterprises, Inc, including with respect to the issuance, offer, sale, marketing, and disclosure of the securities purchased by Plaintiff.

132. Among other things and upon information and belief, Defendant Jeffrey Holley, individually, owns 100% of BOOM Technologies, Inc., a Delaware Corporation, and Jeff Holley Enterprises, Inc, and serves as their CEO, and possesses authority over both companies' financial and securities-related disclosures, and personally participated in the fraudulent material misrepresentations and omissions made to Plaintiff.

133. Defendant Jeffrey Holley therefore possessed the actual power and authority to control, and did in fact control, the persons and entities responsible for the acts, affirmative misrepresentations and omissions alleged herein, including the preparation of all orally communicated and written material that disseminated false and misleading statements and omissions described above.

134. As alleged in Count I, Defendant Jeffrey Holley, acting on behalf of Defendants, violated § 10(b) of the Exchange Act and SEC Rule 10b-5 by, among other things, making material misrepresentations and omissions concerning the value, financial condition, indebtedness, and investment potential of BOOM Technologies, soliciting Plaintiff to purchase BOOM Technologies common stock based upon those misrepresentations and omissions, representing that Plaintiff could purchase approximately $250,000.00 in securities and potentially realize a return of approximately $10,000,000.00, and concealing material information concerning the nature and terms of the securities offering; and employing a fraudulent scheme and course of conduct to induce Plaintiff to purchase the securities and retain Plaintiff's investment funds.

135. The acts and omissions constituting the foregoing violations occurred with respect to securities transactions in which Plaintiff purchased 2,000,000 shares of BOOM Technology stock for approximately $250,000.00.

136. Defendant Jeffrey Holley was a culpable participant in the foregoing violations. Defendant Jeffrey Holley knew, or was deliberately reckless in not knowing, that the material misrepresentations and omissions made to Plaintiff concerning the value and valuation of BOOM Technologies, the financial condition and indebtedness of BOOM Technologies, the nature and terms of the securities offering, the purportedly discounted price of the securities, and the potential return on Plaintiff's investment were materially false and misleading, and Defendant Jeffrey Holley nevertheless caused, approved, or permitted those representations and omissions to be made.

137. Further, Defendant Jeffrey Holley, by virtue of his position, authority, ownership, and actual control over BOOM Technologies and Jeff Holley Enterprises and the relevant

securities offering, had the power to prevent, or cause the correction of the unlawful conduct alleged herein and affirmatively failed to do so.

138. By reason of the foregoing, Defendant Jeffrey Holley is jointly and severally liable to Plaintiff under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), for the damages resulting from the underlying violations of § 10(b) and Rule 10b-5.

139. Plaintiff prays for judgment in his favor and against all Defendants in a fair and reasonable amount to compensate him for the damages he has suffered and will suffer, as will be determined at trial, for punitive damages, for his costs and disbursements in this action, including attorneys' fees and expenses, and for such other and further relief as this Court deems just and proper.

**COUNT III- VIOLATION OF THE OKLAHOMA UNIFORM SECURITIES ACT OF 2004**

140. Plaintiff incorporates herein by reference, as if fully herein, the contents of all preceding paragraphs.

141. Pursuant to Article 5, Section 1-501 of the Oklahoma Uniform Securities Act of 2004 (codified as 71 O.S. § 71-1-509), "[i]t is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly (1) to employ a device, scheme, or artifice to defraud; (2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which it is made, not misleading; or (3) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

142. Defendants, in connection with the offer and sale of BOOM Technologies common stock to Plaintiff, violated 71 O.S. § 1-501 by directly and indirectly employing a device, scheme, and/or artifice to defraud; making untrue statements of material fact and omitting material facts

necessary to make their statements not misleading; and engaging in acts, practices, and/or a course of business that operated as a fraud or deceit upon Plaintiff.

143. Specifically, Defendants, through Defendant Jeffrey Holley, represented to Plaintiff that BOOM Technologies had a valuation exceeding $50,000,000.00, that Plaintiff was purchasing shares at a substantial discount to their purported value, that Plaintiff's approximately $250,000.00 investment could potentially result in a return of approximately $10,000,000.00, and that BOOM Technologies intended to go public within approximately eight (8) months at an opening price of $5.00 or more per share.

144. Defendants' representations were materially false and misleading because Defendants failed to disclose material information concerning BOOM Technologies' actual financial condition, indebtedness, valuation, the basis for its purported valuation, and the nature and terms of the securities offering.

145. Defendants further violated § 1-501 by employing a scheme and course of conduct whereby Defendants solicited Plaintiff's investment, obtained Plaintiff's funds through the sale of BOOM Technologies securities, failed to provide material information necessary for Plaintiff to evaluate the investment, and thereafter used delay tactics when Plaintiff sought information concerning his investment or attempted to sell or recover his investment.

146. The foregoing conduct constituted a device, scheme, and/or artifice to defraud and acts, practices, and/or a course of business that operated as a fraud and deceit upon Plaintiff within the meaning of 71 O.S. § 1-501(1) and (3).

147. The foregoing misrepresentations and omissions concerned material facts relating to Plaintiff's purchase of BOOM Technologies common stock. A reasonable investor would have

considered the actual value, financial condition, indebtedness, valuation, terms of the offering, and potential return of the securities important in deciding whether to invest.

148. Plaintiff relied upon Defendants' material misrepresentations and omissions in deciding to purchase the BOOM Technologies common stock and would not have purchased the securities had Plaintiff known the true facts regarding BOOM Technologies.

149. As a direct and proximate result of Defendants' violations of 71 O.S. § 1-501 and the resulting liability under 71 O.S. § 1-509, Plaintiff suffered economic damages in an amount to be established at trial.

150. Plaintiff is entitled to all remedies available under 71 O.S. § 1-509, including recovery of the consideration paid for the securities, applicable interest, costs, reasonable attorneys' fees, and/or actual damages as permitted by law.

**COUNT IV- COMMON LAW FRAUD**

151. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

152. Defendants, through Defendant Jeffrey Holley, made material representations to Plaintiff concerning BOOM Technologies, the value of its common stock, the financial condition and valuation of the company, and the potential return on Plaintiff's investment.

153. Specifically, Defendant Jeffrey Holley represented to Plaintiff that BOOM Technologies had a valuation exceeding $50,000,000.00, that Plaintiff was purchasing shares at a substantial discount to their purported value, that Plaintiff's approximately $250,000.00 investment could potentially result in a return of approximately $10,000,000.00, and that BOOM Technologies intended to go public within approximately eight months at an opening price of $5.00 or more per share.

154. These representations were material and false when made. Defendants failed to disclose material information concerning BOOM Technologies' actual financial condition, indebtedness, valuation, the basis for its purported valuation, and the nature and terms of the securities offering.

155. Defendant Jeffrey Holley knew that the foregoing representations were false, or made them recklessly and without knowledge of their truth, because he had access to information concerning BOOM Technologies' financial condition, indebtedness, valuation, operations, and the securities being offered to Plaintiff.

156. Defendant Jeffrey Holley made the foregoing representations with the intent that Plaintiff rely upon them in deciding whether to purchase BOOM Technologies common stock and provide Defendants with Plaintiff's investment funds.

157. Plaintiff reasonably and justifiably relied upon Defendants' representations and omissions in deciding to purchase the BOOM Technologies common stock. Plaintiff would not have purchased the securities had Plaintiff known the true facts.

158. As a direct and proximate result of Defendants' fraudulent representations and omissions, Plaintiff purchased the BOOM Technologies common stock and suffered economic injury when the securities failed to have the value represented by Defendants and Plaintiff was unable to realize the represented return on his investment.

159. Defendants' conduct constitutes actionable common-law fraud under Oklahoma law because Defendants made material false representations, knowing them to be false or recklessly without knowledge of their truth, with the intent that Plaintiff act upon them, and Plaintiff did in fact rely upon those representations to his detriment.

160. Plaintiff suffered actual damages in an amount to be established at trial and is entitled to all other damages and relief available under Oklahoma law, including punitive damages to the extent permitted by law.

**COUNT V- CONSTRUCTIVE FRAUD**

161. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

162. Defendants owed Plaintiff a legal and/or equitable duty to provide truthful and complete information concerning BOOM Technologies and the securities Defendants were soliciting Plaintiff to purchase, particularly after Defendants voluntarily undertook to provide Plaintiff with information concerning the value, financial condition, valuation, and future prospects of BOOM Technologies.

163. Defendants breached that duty by making material representations concerning BOOM Technologies and the securities while failing to disclose material information necessary to make those representations complete and not misleading, including information concerning the company's actual financial condition, indebtedness, valuation, the basis for its purported valuation, and the nature and terms of the securities offering.

164. Specifically, Defendant Jeffrey Holley represented to Plaintiff that BOOM Technologies had a valuation exceeding $50,000,000.00, that Plaintiff was purchasing shares at a substantial discount to their purported value, that Plaintiff's approximately $250,000.00 investment could potentially result in a return of approximately $10,000,000.00, and that BOOM Technologies intended to go public within approximately eight (8) months at an opening price of $5.00 or more per share.

165. Defendants' failure to disclose the foregoing material information, while making affirmative representations concerning the value and potential return of the securities, misled Plaintiff concerning the true nature, value, and risks of the investment.

166. Defendants' breach of their legal and/or equitable duty gained an advantage for Defendants by inducing Plaintiff to purchase the BOOM Technologies common stock and provide approximately $250,000.00 to Defendants, while Plaintiff was misled to his prejudice concerning the value and risks of the securities.

167. The foregoing representations and omissions were material because a reasonable investor would consider the actual value, financial condition, indebtedness, valuation, terms of the offering, and potential return of the securities important in deciding whether to invest.

168. Plaintiff reasonably relied upon Defendants' representations and omissions in deciding to purchase the BOOM Technologies common stock. Had Plaintiff known the true facts, Plaintiff would not have purchased the securities.

169. Defendants' conduct constitutes constructive fraud under 15 O.S. § 59 because Defendants breached a legal and/or equitable duty owed to Plaintiff, thereby gaining an advantage by misleading Plaintiff to his prejudice, regardless of whether Defendants acted with an actual intent to deceive.

170. As a direct and proximate result of Defendants' constructive fraud, Plaintiff suffered economic damages in an amount to be established at trial.

171. Plaintiff is entitled to all damages and other relief available under Oklahoma law, including actual and consequential damages, costs, reasonable attorneys' fees where authorized, and such other relief as the Court deems appropriate.

## COUNT VI- NEGLIGENT MISREPRESENTATION

172. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

173. Defendants, through Defendant Jeffrey Holley, supplied information to Plaintiff in the course of a transaction in which Defendants had a pecuniary interest, namely, the solicitation and sale of BOOM Technologies common stock to Plaintiff.

174. Defendants supplied false and misleading information to Plaintiff for the purpose of guiding Plaintiff in deciding whether to purchase BOOM Technologies common stock, including representations concerning the company's valuation, the value of the securities, the price at which Plaintiff was purchasing the securities, and the potential return on Plaintiff's investment.

175. Specifically, Jeffrey Holley represented to Plaintiff that BOOM Technologies had a valuation exceeding $50,000,000.00, that Plaintiff was purchasing shares at a substantial discount to their purported value, that Plaintiff's approximately $250,000.00 investment could potentially result in a return of approximately $10,000,000.00, and that BOOM Technologies intended to go public within approximately eight months at an opening price of $5.00 or more per share.

176. Defendants also supplied materially incomplete and misleading information by failing to disclose information concerning BOOM Technologies' financial condition, indebtedness, valuation, the basis for its purported valuation, and the nature and terms of the securities offering.

177. Defendants failed to exercise reasonable care or competence in obtaining, verifying, and communicating the foregoing information to Plaintiff and, in particular, failed to

exercise reasonable care in making representations concerning the value, financial condition, and future prospects of BOOM Technologies.

178. Defendants supplied the foregoing information specifically for Plaintiff's guidance in determining whether to purchase BOOM Technologies common stock and knew that Plaintiff would rely upon that information in making his investment decision.

179. Plaintiff justifiably relied upon Defendants' representations and omissions in deciding to purchase the BOOM Technologies common stock. Had Plaintiff been provided accurate and complete information, Plaintiff would not have purchased the securities.

180. As a direct and proximate result of his justifiable reliance upon Defendants' negligent misrepresentations and omissions, Plaintiff suffered pecuniary loss, including the approximately $250,000.00 paid for the securities, less the actual value, if any, of the securities received.

181. Defendants' conduct constitutes negligent misrepresentation under Oklahoma law and Restatement (Second) of Torts § 552 because Defendants, in a transaction in which they had a pecuniary interest, supplied false information for Plaintiff's guidance in his business transaction, failed to exercise reasonable care or competence in obtaining or communicating that information, and thereby caused pecuniary loss through Plaintiff's justifiable reliance.

182. Plaintiff is entitled to recover his actual and other damages proximately caused by Defendants' negligent misrepresentations and omissions, in an amount to be established at trial, together with all other relief available under Oklahoma law.

## COUNT VII- BREACH OF CONTRACT

183. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

184. On or about August 24, 2024, Plaintiff and Defendants entered into a written agreement concerning Plaintiff's purchase of BOOM Technologies common stock.

185. The Agreement constituted a valid and enforceable contract between Plaintiff and Defendants, supported by adequate consideration.

186. Plaintiff performed his obligations under the contract, including paying the consideration required for the purchase of the BOOM Technologies common stock.

187. Defendants breached the contract by, among other things, failing to provide Plaintiff with a reasonable means or mechanism to sell, transfer, or otherwise liquidate his shares, to the extent required or contemplated by the contract, and by subsequently refusing to permit or facilitate Plaintiff's efforts to sell his shares despite Plaintiff's repeated requests to do so.

188. Defendants' conduct deprived Plaintiff of the benefit of his bargain under the contract by preventing or substantially impairing Plaintiff's ability to dispose of his shares and realize the value of his investment.

189. Plaintiff repeatedly contacted Defendants regarding the status and value of his shares and expressed his desire to sell his shares. Despite Plaintiff's repeated requests, Defendants failed and/or refused to provide Plaintiff with a means to sell or otherwise recover the value of his investment.

190. Defendants' failure to perform their obligations under the contract constituted a material breach of the contract.

191. As a direct and proximate result of Defendants' breach, Plaintiff was unable to sell or otherwise realize the value of his BOOM Technologies common stock and suffered economic damages, including the loss of the value of his investment.

192. Plaintiff's damages include the consideration paid for the securities, less the actual value, if any, of the securities received, together with any other damages recoverable under the contract and Oklahoma law.

193. Plaintiff has suffered damages in excess of $75,000.00, and further damages to be established at trial.

194. Plaintiff is entitled to all remedies available under Oklahoma law for Defendants' breach of contract, including actual damages, applicable interest, costs, and such other relief as the Court deems just and proper.

## PRAYER

Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally to the extent permitted by law, awarding Plaintiff actual and statutory damages, rescission and restitution or, alternatively, damages representing the difference between the actual and represented value of the securities, pre- and post-judgment interest, punitive or exemplary damages to the extent permitted by law, reasonable attorneys' fees and costs, and all other legal and equitable relief the Court deems just and proper.

Respectfully submitted,

**Rhodes, Hieronymus, Jones, Tucker & Gable, P.L.L.C.**

By:__________________________________

Nicholas J. Foster, OBA 33081
nfoster@rhodesokla.com
Ian W. McDonald, OBA 36205
imcdonald@rhodesokla.com
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone: (918) 582-1173
Facsimile: (918) 592-3390
***Attorneys for Plaintiff,***
***Duy Kinh Nguyen***